James W. Boatner, Administrator, *v.* Stephen Yarborough.

No action lies for the price of fraud. The law leaves parties who traffic in forbidden things and then break faith with each other, to such mutual redress as their own standard of honor may award.

APPEAL from the District Court of East Feliciana, *Ratliff*, J. *Smith & Pond*, for plaintiff. *Bowman & Delee* and *Muse & Hardee*, for defendant and appellant.

Spofford, J. This suit is the sequel, and we trust the final sequel, of the case of *Muse, syndic,* v. *Yarborough et al.,* decided as far back as 1838, and reported in 11 La. 521.

By the result of that suit, *Elias Boatner* (in whose right this action was brought) was evicted of property estimated to be worth about $27,000, of which, by the expenditure of about $5000, the creditors of the original owner, *John Bostwick,* were sought to be defrauded, by means of a scheme first concocted between the present defendant, *Yarborough,* and the said *Bostwick,* and afterwards persistently prosecuted by their confederate, *Elias Boatner,* deceased.

*Yarborough* had become security for *Bostwick* to *Reynolds, Byrne & Co.,* in the amount of five thousand dollars. His object was, first, to save this sum, and then to aid *Bostwick* in defrauding his other creditors. For that purpose, he took a mortgage and pledge of all his valuable property, procured from him a confession of judgment for $5,500, and made a levy upon the property mortgaged and pledged to secure this sum.

At this juncture, on the 14th January, 1834, 'the deceased, *Elias Boatner,* (whose administrator brings this suit) appeared with *M. Boatner,* and took from *Yarborough* a notarial transfer of all his interest in the mortgage, pledge, judgment and seizure, for which they promised to give three promissory notes, amounting to $5,164, and payable respectively on the 1st April, 1834, the 1st November, 1834, and the 1st November, 1835.

After the passage of this notarial act, *Elias Boatner* took control of the execution already levied upon all the property of *Bostwick,* and on the 3d of February, 1834, it was adjudicated to him and his associate *M. Boatner,* for the price of $5,605, enough to satisfy the judgment confessed by *Bostwick* in favor of *Yarborough,* and by the latter transferred to *Boatner.*

Having thus, as he supposed, secured the property, *Boatner,* on the 15th of February, gave *Yarborough* his three notes, as promised in the notarial act of the 14th January, and secured them by mortgage.

The first of these notes, it will be observed, fell due on the 1st April, 1834; but it was not paid.

On the 11th April of that year *Elias Boatner* was served with citation and the petition in the suit of *Muse, syndic,* v. *Yarborough et al.* This petition in the name of the creditors of *Bostwick,* who made a cession immediately after *Boatner* had swept off his available property. through the judgment in favor of *Yarborough,* distinctly charged *Bostwick, Yarborough* and *Boatner* with having conspired to defraud the creditors of *Bostwick,* through the machinery of their mortgage, pledge, judgment, transfer, Sheriff's sale and purchase in the name of the *Boatners,* as the following extract will show :

" Your petitioner represents that the said *Yarborough* and the said *Boatners*

32

BOATNER
v.
YARBOROUGH.

well knew that the said *John Bostwick* was insolvent, and intended suing his creditors as soon as he had made the arrangement with them by which, as he thought, all of his valuable property would be screened from the claims of his creditors, and knowing this fact, they assisted and participated in the arrangement."

The petition prayed that the judgment, transfer, seizure and sale be decreed to be null and void, on account of the fraud which infected them to the injury of the creditors of *Bostwick.*

Upon the trial of the suit contradictorily with *Boatner* and *Yarborough,* a verdict was rendered in favor of the plaintiff generally. There was judgment pursuant to the rule, and the defendants appealed to the Supreme Court, where they seem to have made common cause in seeking to get rid of the judgment upon purely technical grounds, and not by a denial of the fraud.

The judgment of the District Court was affirmed.

*Boatner's* representative now sues his confederate *Yarborough* to recover the price he was to pay the latter for the mortgage, pledge, judgment and seizure, which have thus turned to ashes in his hands. He contends that *Yarborough* warranted their existence as valid claims, and that the warranty has been falsified by the the eviction which followed the suit of *Muse, syndic.*

He alleges that he has paid the three notes he gave for the price. *Yarborough* denies this fact, and in support of the denial produces the original notes uncancelled.

But *Boatner* says that the contract was in effect novated, by giving another note of $8,000 to *Yarborough,* which the latter surrendered in execution under the judgment of *Reynolds, Byrne & Co.* against himself as surety for *Bostwick,* for which he took the mortgage and pledge as an indemnity. This note of $8000 the plaintiff contends was given in lieu of the first three notes, and was bought in on twelve months' credit by *Boatner,* the maker, when it was sold under the judgment of *Reynolds, Byrne & Co.* v. *Yarborough,* and that having paid his twelve months' bond to *Reynolds, Byrne & Co.,* on the 27th of June, 1836, he has thus extinguished the obligation he gave as the price of the claims of *Yarborough* against *Bostwick.* In confirmation of this view, he relies upon the fact that *Yarborough,* on the 3d of January, 1837, cancelled the mortgage given him by *Boatner* to secure the payment of the first three notes.

If these assertions be true, as conjectured by the District Judge, they convict *Boatner* as a conspirator with *Yarborough* to carry out a scheme of fraud after full notice.

For it will be observed that the $8000 note was given by *Boatner* to *Yarborough* on the 25th April, 1834, payable 1st June, 1836, and we have already stated that the petition of *Muse, syndic,* against *Yarborough* and *Boatner,* to annul their transactions, was served upon *Boatner* on the 11th April, 1834. An innocent purchaser in good faith, after service of that petition, could not have renewed and augmented his obligations to a fraudulent vendor who had deceived him.

The District Judge says it is clear that *Boatner* has paid for *Yarborough* the execution that *Reynolds, Byrne & Co.* issued against the latter, that he has been evicted from the claims and mortgages which the latter transferred to him, and that it is but sheer justice that one who has thus paid the debt of another should be reimbursed. That *Yarborough* was under a natural obligation to reimburse *Boatner* may be conceded.

But judicial tribunals should not be called upon to adjust the balance of profit and loss between joint adventurers in iniquity. No action lies for the price of fraud. The law, whose mission is to right the innocent and to enforce the performance of licit obligations only, leaves parties who traffic in forbidden things and then break faith with other, to such mutual redress as their own standard of honor may award.

BOATNER
*v.*
YARBOROUGH.

It is, therefore, ordered, that the judgment of the District Court be avoided and reversed, and this suit be dismissed, the plaintiff paying costs in both courts.

MERRICK, C. J., recused himself, having been of counsel for defendant.