TOBIAS, J.,
Dissents and Assigns Reasons.
hThe function of this intermediate court is to correct errors made by the trial court. In the case at bar, as a matter of technical law, the majority opinion on its face might appear to be correct. I do not agree. I am disturbed by the result in this case based upon the procedural posture in which this case comes to us and what actually happened as gleaned from the record on appeal.
This case comes before us to review the trial court’s judgment granting a motion for summary judgment. Summary judgment is governed by La. C.C.P. arts. 966, et seq. The jurisprudence applying these *968 articles to a case has consistently held more or less as follows:
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. See La. C.C.P. art. 966. A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law.
The parameters of a motion for summary judgment have been described by this court as follows:
A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of | daw.” La. C.C.P. art. 966(B). This article was amended in 1996 to provide that “summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action ... The procedure is favored and shall be construed to accomplish these ends.” La. C.C.P. art. 966(A)(2). In 1997, the legislature enacted La. C.C.P. art. 966 C(2), which further clarified the burden of proof in summary judgment proceedings, providing:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
This amendment, which closely parallels the language of Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), first places the burden of producing evidence at the hearing on the motion for summary judgment on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial.... Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. [Internal cases, case citations, and footnotes omitted.[1]]
In my view, this case turns upon the application of La. C.C. art. 2036 which states: “An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor’s insolvency.”[2] In my view, the jurisprudence |shas applied article 2036 simplistically and literally *969 without adequate analysis of its intent and history. See La. C.C. art. 9.
In the case before us, two affidavits of Wilbur J. “Bill” Babin, Jr., the trustee in bankruptcy for appellee Michael J. Thibo-daux, Sr., etux, are presented: one by the appellant and one by the appellees. One affidavit’s attachment shows that Mamal, Ine.’s[3] insolvency on 4 November 2007 to be $740,089.67 and the other affidavit’s attachment shows Mamal, Inc.’s insolvency on 5 November 2007 to be $676,449.97. The appellant does not with precision address how this change in the amount of
insolvency creates a genuine issue of material fact that would preclude the granting of summary judgment. But I find that the matter is addressed indirectly and implicitly by the appellant. What actually happened between 4 and 5 November 2007 is that Mamal, Inc.’s insolvency actually increased, not decreased, because it transferred property (Mudd-X machines, etc.) in a non-arms-jlengthi transaction for what appears to be less than full value to another, namely, an entity in which Michael J. Thibodaux, Sr.’s son was effectively the owner.
*970 The following is an example of how the literal, simplistic application of article 2036 can be used to defeat a creditor:
Company X owns a thing (La. C.C. art. 448, et seq.) that it shows on its books as having a value of $300,000. In fact, the thing has a fair market value of $900,000. If Company X sells the thing to Company Y for $500,000, its books will show that it is $200,000 more solvent than when it owned the thing. In fact, Company X’s sale of the thing increased its insolvency by $400,000, the difference between the fair market value and the sales price of the thing.
In essence, that is precisely what Mamal, Inc. did in the case at bar which has deprived the appellant of its right to prove a revocatory action at trial by virtue of the literal application of article 2036 to “annul an act of the obligor ... that causes or increases the obligor’s insolvency.” That is to say, Mamal, Inc.’s actions reduced the value of the assets of Michael J. Thibo-daux, Sr.’s estate thereby defeating his creditor, the appellant.
The asset sale that took place in the 5 November 2007 in fact creates a genuine issue of material fact on its face precluding the granting of a motion for summary judgment. See La. C.C.P. art. 2164 (“The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal”). The two Babin affidavits create a genuine issue of material fact on their face. An explanation for the transfer establishing bona fide business reasons for the transfer is needed.
For the foregoing reasons, I respectfully dissent and would reverse the trial court’s decision to grant the motion for summary judgment that is at issue in this appeal.

. Quotation is from Samaha v. Rau, 07-1726, pp. 3-5 (La.2/26/08), 977 So.2d 880, 882.

. The 1984 official comments to the article state:
*969 (a) This Article is new. It changes the law insofar as it abandons the notion of fraud contained in the source articles. Otherwise, it reproduces the substance of C.C. Arts. 1969, 1970, 1971, 1972, 1975, 1977, 1985, 1986, 1988, and 1994 (1870).
(b) This Article substitutes an act of the obligor that causes or increases his insolvency for the notion of an act in fraud of creditors contained in the source articles. As used in those articles, the word "fraud” has a meaning which is difficult to determine but which appears different from its meaning in other contexts. In this revision, the criterion for the revocatory action is an objective one. It may be satisfied by an act done negligently as well as intentionally.
(c) The revocatory or Paulian action, an institution derived from Roman law, is the civil law analogue to the common law suit to set aside a fraudulent conveyance.
(d) The term "act” in this Article encompasses contracts, acts of payment, and any "contrivance” employed by an obligor to defeat his obligee’s rightful claim. See Newman v. Baer, 50 La. Ann. 323, 23 So. 279 (1897). According to the jurisprudence, any arrangement, whether made through judicial machinery or otherwise, whereby an obligor tries to give an obligee an advantage over others may be attacked by the injured obligees. See, e.g., Muse v. Yarborough, 11 La. 521 (1838), (obligor confessed judgment to one obligee in prejudice of the rights of others); Bank of Patterson v. Urban Co., 114 La. 788, 38 So. 561 (1905), (obligor filed answer and consented to quick trial of suit).
(e) The expression, "... the result of a failure to act of the obligor” contemplates situations in which an obligor becomes insolvent, or his insolvency increases, because of his failure to act, as when the obligor fails to defend himself in a law suit, and the resulting judgment creates or increases his insolvency.
(f) Under this Article, anteriority of the debt and insolvency of the debtor are prerequisites to the revocatory action, in accordance with traditional doctrine received by the Louisiana jurisprudence. See Tate, "The Revocatory Action in Louisiana Law,” Essays on the Civil Law of Obligations 133 (Dainow ed.1969); Landry, "The Revocato-ry Action in the Quebec Civil Code: General Principles,” Id. at 115. An obligee’s claim does not have to be liquidated to judgment to be considered an anterior debt. Holland v. Gross, 195 So. 828 (La.App. 2nd Cir. 1940); Ventrilla v. Tortorice, 160 La. 516, 107 So. 390(1926).
(g) The articles in this section do not address situations in which an already insolvent obligor gives an unfair advantage to one of his creditors. Situations of that kind are regulated by federal bankruptcy law. See 11 U.S.C. § 547.
(h) An obligor's payment of a just and due debt may not be annulled under this Article. Although it reduces his assets, it also reduces his liabilities by the same amount. If the obligor gives a thing in payment of such a debt, C.C. Art. 2658 (1870) controls. See Morgan v. Gates, 396 So.2d 1386 (La.App. 2nd Cir.1981).

. Mamal, Inc. is wholly owned by Michael J. Thibodaux, Sr.